In re Angela GIGUERE, Debtor.

Thomas W. KELLY, Jeremy W. Howe
and Turner C. Scott, Plaintiffs,

v.

Angela GIGUERE, Defendant.

Bankruptcy No. 91–10800.
Adv. No. 93–1037.

United States Bankruptcy Court,
D. Rhode Island.

April 1, 1994.

David A. Schechter, Providence, RI, for debtor/defendant.

Francis S. Holbrook II, Miller, Scott, Howe & Kelley, Newport, RI, for plaintiffs.

Office of U.S. Trustee, Sheryl Serreze, Providence, RI.

## DECISION AND ORDER: (1) VACATING THE ORDER OF CONFIRMATION, AND (2) REVOKING DISCHARGE

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on October 25 and 26, 1993 on Plaintiffs' Complaint requesting denial of the Debtor's discharge under 11 U.S.C. § 727(a) or alternatively, revocation of the Order of Confirmation, pursuant to 11 U.S.C. § 1144. The Plaintiffs allege that the Debtor did not list them as creditors in her bankruptcy schedules, and that she concealed and/or failed to disclose assets which may be property of the Estate. The Debtor disputes that the Plaintiffs are in fact creditors, and asserts that she has no interest in the [undisclosed] property which was the subject of the instant litigation.

### FACTS

Angela Giguere filed a Chapter 11 petition on April 1, 1991. Twenty-six months later, on June 7, 1993, after considerable posturing by the Debtor,[1] her Third Amended Plan was finally confirmed. The plan provides for, *inter alia*, a $30,000 payment to the holder of the mortgage on her personal residence, and an eighty percent dividend to unsecured creditors, whose claims total $39,970. The Plaintiffs in this adversary proceeding are

attorneys who performed legal services for Ms. Giguere in 1989, in connection with the purchase of a liquor license from Bank of New England. Her former attorneys claim that Ms. Giguere is indebted to them in the amount of $1,300. The Debtor counters that not only is she not indebted to the Plaintiffs, but that they owe her money for alleged legal malpractice arising out of their representation of her regarding the purchase of the liquor license.

The essence of the present dispute involves the alleged failure of the Debtor to disclose assets standing in her name, in the Statement of Affairs, Schedules, or any of her four Disclosure Statements, or Plans of Reorganization. It was not until testimony given in cross-examination at the trial that the following information was finally elicited from the Debtor.

In April, 1989, Angela Giguere and Frank Carrozza, her business associate and former live-in boyfriend, attended an auction in Newport, Rhode Island, at which the physical assets and liquor license of a defunct business were being sold. Ms. Giguere was the successful bidder for the liquor license, for $57,000. She paid a $5,000 deposit at the auction and then contacted Attorney Jeremy Howe to complete the transfer. Mr. Howe referred Ms. Giguere to an associate, Turner Scott, Esq., who met with her on May 1, 1989. At that meeting Scott and Giguere agreed to a fee arrangement of $100 per hour, and discussed the particulars of finalizing the purchase of the license. In August 1989, because he was planning to be out of the country on business, Mr. Scott in turn referred Ms. Giguere to another associate, Thomas Kelly, Esq. During this time, the Plaintiffs were partners in the Newport law firm of Kelly, Howe, Scott, and Kelly. With Mr. Kelly representing her, an agreement was executed with Bank of New England conveying the Bank's interest in the liquor license to Angela Giguere for the sum of $57,000.[2]

---

1. The docket sheet in this case consists of 12 pages and over 50 separate entries. The first three disclosure statements and associated hearings illustrate and remind us of the evasive and

inequitable manner in which the Debtor was attempting to treat her creditors.

2. Giguere argues that while it "may appear" that she is the legal owner of the liquor license, Frank

On December 13, 1989, Giguere executed an agreement to sell or "flip" the license to Alfred and Laurie Bucci for $150,000, and the Buccis gave her a deposit of $10,000. The sale was never consummated, however, because the Newport Town Council refused to act on Giguere's application to have the liquor license transferred to her, and the deposit was eventually returned to the Buccis.[3]

As a result of this disappointing turn of events, the services of Joseph DeAngelis, Esq., were enlisted, and on December 30, 1991, he filed suit against the FDIC, as successor-in-interest to the Bank of New England, in the United States District Court for the District of Rhode Island. The action, entitled "Angela Giguere v. Federal Deposit Insurance Corporation and Roger Williams Financial, Inc.," Civil Action No. 91–693, was brought to recover $57,000 paid for the liquor license, plus the alleged $93,000 profit Giguere would have realized on the re-sale of the license to the Buccis. The suit against FDIC was filed during the early pendency of this Chapter 11 case, without notice to creditors, and without Court approval. On August 26, 1992, again without a word to her creditors, Ms. Giguere settled the case for $45,000. $7,500 was paid to Mr. DeAngelis for legal services and on September 4, 1992, Giguere received a check in the amount of $37,500 which she says she immediately endorsed and delivered to Frank Carrozza. The Debtor testified that she never informed Mr. DeAngelis about her pending bankruptcy, and that she did not tell her bankruptcy counsel, David Schechter, Esq., about any legal or equitable interest in the liquor license or the law suit until March 1993.

On December 10, 1992, also during the pendency of this Chapter 11 case, another case was filed in the Providence County Superior Court, also naming Ms. Giguere as plaintiff, seeking money damages from the Plaintiffs in this action. In this action which was filed by yet another attorney, Vincent Indeglia, Esq., the Debtor alleges that Attorneys Howe, Scott, and Kelly were negligent in representing her with respect to the 1989 liquor license transfer. This suit was also filed without notice to creditors or the Court, and remains pending in the Superior Court.

Additionally, at the tail end of the trial we heard evidence, previously undisclosed, regarding the means by which the Debtor's plan of reorganization was to be funded, suggesting the existence of additional irregularities in this case. It now appears that in June 1993, Mr. Schechter drafted and caused documents to be executed whereby the home of the Debtor's father, Joseph DiStephano, was transferred into the C & G Trust, so-called. The trust designates David Schechter as trustee, and names the Debtor's sixteen year old daughter, Christine, as sole beneficiary under the trust. As the Debtor's bankruptcy attorney, Mr. Schechter did not list any interest in such trust property in her schedules or in the Disclosure Statement. He then arranged to pledge the trust's only asset as collateral to fund his bankruptcy client's plan of reorganization.[4]

We must now determine if the foregoing clandestine handling of Ms. Giguere's debtor-in-possession affairs warrants denial of discharge under 11 U.S.C. § 727(a), and/or revocation of the Order of Confirmation under 11 U.S.C. § 1144.

## DISCUSSION

The Plaintiffs argue that Ms. Giguere's discharge should be denied under

---

Carrozza is the real title holder, as he supplied the funds for the purchase. According to Mr. Carrozza, the license was purchased in Giguere's name to facilitate its transfer, because of "the negative stigma associated with his name in Newport."

3. The present status of the liquor license is still unclear, and the record does not answer the question whether the Newport Town Council's refusal to approve the transfer of the license was based on any known or perceived connection between Giguere and Carrozza.

4. Ms. Giguere testified that the trust was established to insulate the house from being used to pay for her father's medical and nursing home expenses. Mr. DiStephano had suffered a stroke and is seeking public assistance, to which he might not be entitled if he owned real estate. Considering the lack of disclosure (until now) of Mr. Schechter's multiple roles: as attorney for the Debtor; for Joseph DiStephano as settlor of the C & G Trust; and as trustee for Christine Giguere, a clearer conflict would be hard to find.

§ 727(a), but we fail to see how this section applies in a Chapter 11 case. The Code provides that "[s]ubchapters I and II of chapter 7 of this title apply only in a case under such chapter." 11 U.S.C. § 103(b). Section 727 is part of subchapter II, and therefore appears to apply only in Chapter 7 cases. There is however, mention of § 727(a) in Section 1141 which provides in part that:

[t]he confirmation of a plan does not discharge a debtor if—

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; *and*

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

11 U.S.C. § 1141(d)(3) (emphasis added). In a Chapter 11 case, therefore, a discharge may be denied if the above three requirements are all met. In the instant case, the Plaintiffs focus only on § 1141(d)(3)(C) (i.e. that the Debtor would be denied a discharge under § 727(a)), and they fail to address the other elements necessary for denial of discharge. Clearly, the Plaintiffs have not met their burden under 11 U.S.C. § 1141(d)(3) and accordingly, the Plaintiffs' request to deny the Debtor her discharge pursuant to § 727(a) must be DENIED.[5]

The Plaintiffs' alternate argument is that the Order of Confirmation should be revoked pursuant to § 1144, entitled "Revocation of an order of confirmation," which provides:

On Request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order

was procured by fraud. An order under this section revoking an order of confirmation shall—

(1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and

(2) revoke the discharge of the debtor.

11 U.S.C. § 1144. After hearing, and upon consideration of all of the evidence, we conclude that this argument has merit.

Fraud in obtaining the order of confirmation is the sole means by which such an order can be revoked in a Chapter 11 proceeding, and strict compliance with § 1144 is a prerequisite to relief being granted under that section.[6] *See In re Newport Harbor Assoc.*, 589 F.2d 20, 22 (1st Cir.1978). However, "Congress provided no dictionary for the word 'fraud' and left it to the development of judicial gloss to guide delineation of types of conduct generally understood to constitute fraud," *In re Braten Apparel Corp.*, 21 B.R. 239, 256 (Bankr.S.D.N.Y.1982), *aff'd,* 26 B.R. 1009 (S.D.N.Y.1983), *aff'd,* 742 F.2d 1435 (2d Cir.1983), and it has been held that "fraud is misrepresentation, or misrepresentation by omission, of material facts in the disclosure and confirmation process." *Official Comm. of Unsecured Creditors v. Michaelson (In re Michaelson),* 141 B.R. 715, 725 (Bankr.E.D.Cal.1992). When considering a request for revocation of the order of confirmation, fraudulent intent is shown when "a person who (1) is obligated to disclose, (2) knows of the existence of material information, and (3) does not disclose it." *Id.* The materiality of the information not disclosed is judged by an objective rather than a subjective standard which hails from the definition of adequate information set forth in 11 U.S.C. § 1125(a). *Id.* In applying this standard we consider "what the 'hypothetical reasonable investor typical of holders of claims or interests of the relevant class' would want

---

**5.** Even if the Plaintiffs had attempted to establish the criteria in §§ 1141(d)(3)(A) and (B), they would not prevail, because the Debtor's plan does not provide for the liquidation of all or substantially all of the property of the estate, nor is the Debtor terminating her business after consummation of the plan.

**6.** In the instant case, the Debtor concedes that the Plaintiffs are parties in interest, and it is undisputed that their request for revocation of the Confirmation Order was made within 180 days after the entry of said Order.

to know in order to make an informed judgment about the plan." *Id.* (*quoting* 11 U.S.C. § 1125(a)).

■ As debtor in possession, Ms. Giguere is a fiduciary for creditors and the Court, and bears the responsibility of a trustee to act in the best interest of the estate. *See Tri–Cran, Inc., v. Fallon (In re Tri–Cran, Inc.)*, 98 B.R. 609, 617 (Bankr.D.Mass.1989); 11 U.S.C. § 1107(a). As such, during the disclosure and confirmation process she was obligated to disclose all known material information, and in this regard she has clearly breached said duty. Much of what was uncovered during the two day trial was material information that should have been included in her schedules, disclosure statement, and plan. The existence of assets in which the Debtor *may have an interest* is among the most significant information that creditors can have, and it is not for the Debtor to determine, unilaterally and secretly, whether her financial interests and property rights would or would not be of interest or available to creditors.

We heard information during the latter part of this hearing regarding the transfer of Mr. DiStephano's home in trust for the Debtor's daughter, but because there was no pretrial disclosure of these events, creditors were denied the opportunity to investigate whether the creation of the trust and the conveyance was a transfer for the benefit of the Debtor (not her daughter), as well as an attempt to place the real estate beyond the reach of creditors of both Giguere and DiStephano, i.e. State and/or Federal Medi-

care/Medicaid agencies. These concerns are reinforced by the Debtor's own admissions, as well as the fact that Mr. Schechter, as trustee for Ms. Giguere's daughter, arranged for the trust res to be pledged as collateral to fund Giguere's plan of reorganization. These activities place Mr. Schechter's loyalties into serious question, and it is quite likely that a conflict of interest exists by his representation of the Debtor while acting as trustee for her daughter.

■ With respect to the liquor license, the Debtor argues that no disclosure was required because she did not have any interest in the license, the settlement, or in either of the license-related law suits. She contends that she was merely a straw for Frank Carrozza and that these activities were a regular part of her job, for which she received no additional compensation or benefit.[7] We reject this suggestion, and conclude that where all of the documents indicate that the Debtor is the record owner of the liquor license, the law suits, and the settlement proceeds, she was clearly obligated to disclose this information to her creditors and to explain away these indicia of legal ownership. Even attributing some veracity (hypothetically only) to the Debtor's testimony that she had no actual interest in any of these assets, the broad definition of property of the estate contained in § 541 of the Code requires their disclosure.[8]

The Debtor was obligated to at least disclose this information, and to afford creditors the opportunity to make an independent inquiry into the true ownership of the assets in

---

7. Frank Carrozza testified that he pays the Debtor $700–$800 per month to manage all of his business affairs in Newport, including the management of several rental and condominium units. We find it incredible that the Debtor would acquire a liquor license in her name, allow law suits to be commenced in her name, and arrange the sale of the liquor license potentially for a $93,000 profit, with no expectation of receiving *any* additional compensation from Carrozza. We find the testimony of Thomas Kelly to be more believable when he said that Ms. Giguere told him "she expected to make $100,000 from the Bucci deal and that she had already decided how to spend some of the money."

8. If we accept the Debtor's version of the facts, then it necessarily follows that she submitted

false statements in pleadings and affidavits filed with the District Court and the Superior Court, in the two pending lawsuits wherein she represented that she was the real party in interest, and that it was she who suffered the financial injury. (See Plaintiffs' Exs. 1, 2, and 4.)

In addition, R.I.Gen.Laws § 3–5–10 deals extensively with the qualification and suitability of persons seeking to acquire liquor licenses, as well as the right of the licensing authority to know the identity of the applicant, and the obligation to make full disclosure as to who the applicant really is. According to her own testimony, this Debtor, in concert with Mr. Carrozza, violated both the spirit and the letter of this statute.

question. Creditors and the Court were relying upon information provided at the time of confirmation, but if any of the above-referenced disclosures had been made when required, confirmation would have been delayed until creditors conducted their own inquiry, and possibly until after the appointment of a Trustee, a creditors' committee, or conversion to Chapter 7.

The Debtor's conduct in this case is neither original nor of first impression. Ninety years ago the District Court for the District of Rhode Island decided a case under a provision of the former Bankruptcy Act that is quite similar to 11 U.S.C. § 1114, holding:

> That a false statement by a bankrupt as to the condition of his estate, made in a sworn schedule, if relied upon by a creditor in agreeing to a composition, would constitute fraud in procuring the composition, is clear. The purpose of the schedule is to inform the creditors of the condition of the bankrupt's estate. If the creditor believes this information to be true, and is influenced thereby to accept a composition, this is 'fraud practiced in the procuring of such composition,' within the meaning of section 13, c. 3 of the bankruptcy act.

*In re Roukous,* 128 F. 645, 646 (D.R.I.1904). *Roukous,* in our opinion, is still good law, including the notion that the duty to provide full and accurate information in the sworn schedules is as important today as it was in 1904.

Additionally, the First Circuit Court of Appeals has recently commented on the importance of disclosure requirements in bankruptcy and quoted extensively with approval *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). *See Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.), Inc.,* 989 F.2d 570, 571–72 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993). In *Payless,* the Court held that a debtor was estopped from prosecuting a cause of action that it failed to schedule in a prior bankruptcy, finding that the omission by the debtor

amounted to "palpable fraud." *Id.* In discussing disclosure requirements, the Court quoted as follows from *Oneida:*

> A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights....
>
> Disclosure is important, in this case, not only to the bank as an adversary and as a creditor, but to other creditors and the bankruptcy court. Here, "the silence" in the Oneida bankruptcy record concerning this present claim, as they say in the vernacular, "is deafening".

*Oneida,* 848 F.2d at 416–417 (citations omitted); *Payless,* 989 F.2d at 571–72.

When Ms. Giguere failed to reveal the items discussed above, she misrepresented her financial condition, and the Court, in approving the Disclosure Statement and Order of Confirmation, and the creditors in voting to accept the plan, did so in reliance upon information which was incomplete and incorrect. Accordingly, we find that the Debtor intentionally concealed assets and/or material information, which constitutes fraud in procuring the order of confirmation.

 We also find that when the Debtor's attorney was made aware of the omitted information in March 1993, he was required to update the statement of affairs and schedules. Based upon the record, we find that Mr. Schechter breached his continuing duty[9] to update the schedules as new information became available to him.

For all of the foregoing reasons, including the Debtor's demonstrated lack of good faith and her indifference to accuracy and truth, we conclude that she committed fraud in the procurement of the Order of Confirmation. Accordingly, it is ORDERED that:

1) The Order dated June 7, 1993 confirming the Debtor's plan of reorganization is VACATED, pursuant to the provisions of 11 U.S.C. § 1144;

---

9. As of this date, the schedules and statement of affairs have not been amended to conform with the facts adduced at trial.

2) The Debtor's discharge is REVOKED, pursuant to 11 U.S.C. § 1144(2);

3) Any entity that received payment under the plan is entitled to retain the same and to offset the amount against its allowed claim; and

4) The Plaintiffs herein, as well as the United States Trustee, creditors, and other interested parties, have 30 days within which to file requests for the appointment of a Chapter 11 Trustee, or to convert to Chapter 7, or to seek whatever relief they deem appropriate. The appointment of an independent, non-insider fiduciary must be considered, in light of the Debtor's demonstrated adverse interest to creditors, which disqualifies her from performing the duties of a [trustee] debtor-in-possession. *See* 11 U.S.C. § 1104(a)(1).[10]

Enter Judgment consistent with this opinion.

---

10. Instead of concealing them, an independent trustee would be required to investigate thoroughly and report to the Court the facts concerning the $45,000 FDIC settlement, the alleged malpractice claim against the Plaintiffs herein, his or her conclusions regarding the true ownership of the assets of the C & G Trust, and the status of the liquor license.