**In re Lawrence G. WILLIAMS, Debtor.**

**Bankruptcy No. 90–12125.**

United States Bankruptcy Court,
D. Rhode Island.

Oct. 20, 1995.

As Corrected Dec. 12, 1995.

Gerard Riso, Kurtzman, Haspel & Stein, Spring Valley, N.Y., Andrew Richardson, Boyajian, Harrington & Richardson, Providence, R.I., for Debtor/Plaintiff.

Peter Sklarew, Senior Trial Attorney, Tax Division, U.S. Dept. of Justice, Washington, DC.

Paul Goodale, Adler, Pollock & Sheehan, Providence, RI, for Citibank, N.A.

Matthew McGowan, Chapter 7 Trustee, Salter, McGowan, Swartz & Holden, Inc., Providence, R.I.

### DECISION AND ORDER ESTABLISHING TIME OF DENIAL OF DISCHARGE, AND LIFTING AUTOMATIC STAY

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on September 7, 1995, on the United States' "Motion for Expedited Entry Summarily Denying Discharge (Due to Collateral Estoppel) and for Order Lifting Stay Unless Such a Discharge–Denial Order is so Entered First." The parties are in serious disagreement over the effect and/or interpretation of our decision in *Citibank v. Williams* (*In re Williams*), 159 B.R. 648 (Bankr.D.R.I. 1993), wherein it was ordered that Williams' discharge be denied under 11 U.S.C. § 727(a)(2)(A).

At issue is whether the Internal Revenue Service may now assert a $22 Million Dollar priority tax claim against the Debtor, or whether the claim is time barred.

### TRAVEL

On December 3, 1990, Lawrence Williams filed a Chapter 7 petition, and on March 7, 1991, Citibank filed an Adversary Proceeding seeking to deny the Debtor his discharge under § 727(a)(2)(A). On April 5, 1991, the Debtor converted the case to Chapter 11, and the hearing on objection to discharge was held while he was a Chapter 11 debtor in possession. At the time the Decision was entered denying discharge, Williams had been in Chapter 11 for thirty-four months, without ever having filed a plan or disclosure statement. On April 14, 1995, on the motion of the United States Trustee, and because there was not a reorganization reasonably in prospect, the case was converted back to Chapter 7.

## ISSUE(S)

Because of the heavy interaction in this case between the Internal Revenue Code and the Bankruptcy Code, we are now called upon to determine: (1) whether the denial of Williams' discharge was effective as of the date of the *Citibank* Decision—October 8, 1993; or (2) whether the ruling could operate (a) only as a declaratory statement denying the discharge *in futuro*, subject to the requirements of § 1141(d)(3); or (b) automatically, upon conversion of the case to Chapter 7, on April 14, 1995.[1] Neither the Debtor nor Citibank raised § 1141 as an issue in the adversary proceeding,[2] and the IRS was not a party in that dispute. At this time, however, resolution of the issue is central to the case. Upon consideration of the arguments, and for the reasons discussed below, we conclude that the result urged by the IRS is the only logical one.

## DISCUSSION

■■ In a Chapter 11 case the Court may not enter an order denying an individual debtor's discharge, unless the following three elements are present: (1) that the debtor's plan provides for liquidation of all or substantially all of the property of the estate; (2) that the debtor does not engage in business after consummation of the plan; and (3) that the debtor would be denied a discharge under § 727(a), if the case were a case under Chapter 7. *See* 11 U.S.C. § 1141(d)(3); *In re Giguere*, 165 B.R. 531, 533–34 (Bankr.D.R.I. 1994). Because this Debtor had not filed either a disclosure statement or plan at the time the *Citibank* decision was rendered, the denial of discharge could only be advisory or declaratory, and could not become final until something else happened, i.e., either all three § 1141 elements are present, or the case is converted to Chapter 7.

■■ The Government also argues that upon conversion of the case to Chapter 7, on

April 14, 1995, denial of discharge was automatic, final, and effective on that date, since the Court had already made the necessary findings and conclusions for denial of the Debtor's Chapter 7 discharge in the *Citibank* decision. *See* 159 B.R. at 661–62.

The Debtor counters, not very persuasively: (1) that Williams' discharge was denied on October 8, 1993, with the entry of the *Citibank* decision; (2) that pursuant to 11 U.S.C. § 362(c)(2)(C) the stay was lifted as of that date; (3) that the one year period within which the IRS must assess taxes began to run on that date; and (4) that the last opportunity for the IRS to assess taxes against Mr. Williams expired on October 8, 1994.

Williams improves his position very little by relying on *In re Selig*, 135 B.R. 241 (Bankr.E.D.Pa.1992), which has been taken considerably out of context. In *Selig*, the Court was dealing with cross motions for summary judgment and a motion to dismiss a multi-count complaint, with Count One seeking denial of discharge under § 727. *Id.* at 242. The defendant argued that the entire adversary proceeding should be dismissed, on the ground that § 727 is inapplicable in a Chapter 11 case. *Id.* at 243. The Court denied the motion to dismiss, saying that § 727 was applicable through § 1141(d)(3), and that: a "complaint under § 727(a) is . . . an appropriate vehicle to challenge the discharge of Chapter 11 Debtors." *Id.*

As we read the case, the court in *Selig* was merely commenting on the *propriety* of raising § 727(a) issues in a Chapter 11 case, and that it did not address the merits of the complaint under § 1141(d)(3). At the tail end of its decision the Court stated that the § 727 complaint would be scheduled for hearing at a later date, *id.* at 246, but left no clue as to the basis of its authority to deny discharge under § 727, in a pending Chapter 11 case. In any event, if the *Selig* court had

---

1. Pursuant to 11 U.S.C. § 362(c)(2)(C) the automatic stay is lifted upon granting or denial of the discharge. The IRS advises that it has one year to assess taxes against the Debtor from the time the stay is lifted, and that it has not made any assessments in this case, to date, against Lawrence Williams.

2. Citibank did reference 11 U.S.C. § 1141 in the joint pretrial order, but that was the last we heard of the issue. In the aftermath of the discharge and sanctions hearings, we probably considered the parties' silence on the issue as a waiver, and did not think about it again.

716

specifically concluded that there was such authority, we would not follow that ruling.

The Debtor also suggests, quite predictably, that the IRS is looking for the Court to bail it out of a huge predicament for its failure to timely assess priority tax claims against the Debtor, in the amount of $22 Million Dollars. Regardless of, and without deciding the accuracy of this comment, it may not be the basis for our decision here, which is driven strictly by statute and by operation of law.

The Debtor loses further momentum by insisting that he has *always* understood that his discharge was denied as of October 8, 1993, and that the automatic stay was lifted as of that date, triggering the commencement of the one year tax assessment period. This contention is totally inconsistent and irreconcilable with the position taken by Williams throughout the litigation in the tax adversary proceeding, which has been dominated by his ongoing but unsuccessful and frustrated efforts to compel document production by the IRS. *See Williams v. United States (In re Williams)*, 181 B.R. 1 (Bankr. D.R.I.1995). It is inconceivable that Williams would have so vigorously litigated the document production issues, if it had ever occurred to him that collection of his tax debts was in fact time barred. We attribute the actions of the parties at this juncture to the fact that everyone is just now waking up to the § 1141 issue, including the Court, which readily admits that it did not have this (time bar) question in mind until the IRS filed the instant motion.

Based upon the arguments, the applicable law, and for the reasons discussed above, we make the following findings and/or conclusions:

■ (1) That § 1141 establishes a three-pronged condition precedent to the authority of Bankruptcy Courts to deny discharge in Chapter 11 cases, and that by writing § 1141(d)(3) in the conjunctive, Congress clearly intended to require the presence of all three elements, before a final order denying discharge could be entered in a pending Chapter 11 case.[3] *See Giguere*, 165 B.R. at 533–34; *In re River Capital Corp.*, 155 B.R. 382, 387 (Bankr.E.D.Va.1991);

(2) That the October 8, 1993 *Citibank* decision, vis-a-vis denial of the Debtor's discharge, was advisory only at that time, due to the Plaintiff's status as a Chapter 11 Debtor, and the language of § 1141(d)(3);

(3) Regarding the § 727 issue, the denial of discharge became final on April 14, 1995, when the case was converted to Chapter 7, the judgment denying the Debtor's discharge should be entered in the main bankruptcy case as of that date, and the notice of denial of discharge should be mailed to all creditors forthwith, *see* Fed.R.Bankr.P. 4006; and

■ (4) The automatic stay is deemed lifted under 11 U.S.C. § 362(c)(2)(C) as of April 14, 1995.

Enter Judgment consistent with this opinion.

3. We are concerned, by this ruling, of leaving the impression that a debtor who commits acts warranting denial of discharge in Chapter 7 might, through a Chapter 11 case, have his/her debts discharged simply by filing a non-liquidating plan or by continuing to engage in business after consummation of the plan. To discourage the use of this tactic, we can assure that such debtors, in *this* Court, would be subject to the closest scrutiny under § 1129(a)(7)(A), requiring acceptance of a plan by all impaired creditors, or providing creditors at least that to which they would be entitled from a Chapter 7 debtor whose discharge was denied, i.e., payment in full of all claims.