In re OGDEN MODULARS, INC., Debtor.

Curt OGDEN, Plaintiff,

v.

OGDEN MODULARS, INC., Defendant.

Bankruptcy No. 93–43108–172.
Adv. No. 94–4339–172.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

April 3, 1995.

Steven T. Stanton, Edwardsville, IL, for debtor.

Peter D. Kerth, Clayton, MO, for plaintiff.

Donald Singer, Kenneth E. Dick, St. Louis, MO.

Jerald Enslein, The Stolar Partnership, St. Louis, MO.

### MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

The trial of these matters was commenced on March 6, 1995 and concluded on March 8, 1995. The parties agreed that the trial of the Adversary Proceeding would be consolidated with the hearing on the motion of Curt Ogden ("Plaintiff"), to reconsider an order that denied a request for the appointment of a trustee. At the conclusion of the trial, the matters were submitted to the Court for consideration of the record as a whole.

This is a core proceeding pursuant to Section 157(b)(2)(L), (O) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334, and Rule 29 of the Local Rules of the United States District Court for the Eastern District of Missouri. This Memorandum contains the final findings and conclusions of the Bankruptcy Court.

Ogden Modulars, Inc. ("Debtor") has described its business as the leasing and sale of modular trailer units. The Debtor has been engaged in this enterprise since about 1990 when it acquired the business of Murphy Leasing Company.

This voluntary Chapter 11 case was commenced on June 4, 1993. Since that time, the Debtor has continued to operate its business as a Debtor In Possession and as a Reorganized Debtor, although it appears that the decision to liquidate the business had been made prior to the commencement of the case. On June 30, 1994, the Court confirmed the Debtor's plan of reorganization that provides for the Debtor to liquidate all of its assets through a combination of continued business operations and a public auction. The Plaintiff (a prepetition judgment creditor) filed a ballot rejecting the proposed plan, but did not appear at the confirmation hearing or otherwise oppose confirmation. Although Plaintiff's motion for the appointment of a trustee had been filed shortly before the confirmation hearing, no request for expedited processing was presented, and the matter was scheduled for a hearing according to the Court's regular calendaring procedure. The request to appoint a trustee was denied at the hearing after the Debtor's plan had been confirmed.

Most of the actions complained of in these proceedings involve post-petition transactions involving the Debtor's principals. Maria A. Montgomery, the Debtor's President and sole shareholder testified that in about January, 1994, after the commencement of this case, she formed a sole proprietorship known as O.M. Enterprises. She stated that the business of O.M. Enterprises is the selling and leasing of office trailers, the same as the business of the Debtor. She stated that money from the operation of O.M. Enterprises is deposited into and withdrawn from her personal bank account.

O.M. Enterprises has no employees other than Maria A. Montgomery and no personal property or other equipment that would be associated with the selling and leasing of office trailers.

The trial of this matter described a series of post-petition transactions between O.M.

Enterprises and the Debtor In Possession, operated by Greg Ogden, its Vice–President/General Manager. O.M. Enterprises is a sole proprietorship operated by the Debtor's President, who is also the mother of the Debtor's Vice–President/General Manager. After a consideration of the Debtor's explanations of its operations, the Court has determined that these post-petition transactions were improper because they involved insider dealing, unauthorized use and transfer of estate assets, and a failure to disclose material information about the Debtor's operations. The Debtor's principals had responded to the Plaintiff's allegations by arguing that, even if the Court were to make such determinations, the post-petition transactions should be sanctioned because they produced a profit for the Bankruptcy estate. This argument fails to address the questions of whether or not the profit to the estate would have occurred even if the improper transactions had not taken place, and whether or not the amount of the profit would have been larger had the Debtor complied with the requirements of the Bankruptcy Code. Similarly, it cannot now be determined whether or not any other creditor would have rejected the Debtor's Plan, or objected to its confirmation had the information about the improper transactions been disclosed.

It is not necessary in this consideration to repeat each of the improper transactions described during the trial. The following summaries describe the types of activities that are the basis for the Court's conclusions.

(1) After commencement of this Chapter 11 case, and while the Debtor continued to operate its business, the Debtor's President started a new enterprise (O.M. Enterprises) that for all intents and purposes was a competitor of the Debtor.

(2) The Debtor's President received a flat salary plus a $5,000.00 monthly commission from the Debtor during the pendency of this case. She was not identified as the recipient of the $5,000.00 payment in the Debtor's Schedules or in the Disclosure Statement or Plan.

(3) The Debtor's President used the Debtor's employees and the Debtor's personal property to move two trailers to the Debtor's premises after she acquired them from another entity. The Debtor's President paid nothing for these trailers which she received as part of a transaction between the Debtor and a religious organization known as the Oblate Fathers. As a result of these and related transactions, the Debtor's President ultimately received approximately $40,000.00 and the Debtor received approximately $11,500.00. There was no written agreement between the Debtor's President and the Debtor concerning the acquisition and disposition of these trailers.

(4) From about 1989 through a short period of time after the Bankruptcy Petition was filed, the Debtor had consistently received rental income for the lease of two cooler trailers. The Debtor's Vice–President testified that after commencement of this case he was unable to locate the ownership records for these trailers. He then decided to start sending the rent checks to his mother, the President of the Debtor. As a result of this transaction, the Debtor's President received approximately $2,600.00 during the pendency of this case and prior to the hearing in this adversary proceeding.

(5) The Debtor's President leased a trailer from the Debtor and thereafter re-leased it and collected lease payments from the Lakeview Cemetery. The Debtor's President realized a profit from this transaction of approximately $350.00.

(6) There were at least two other transactions wherein the Debtor's President purchased trailers from third-party entities on behalf of O.M. Enterprises after the entities had first contacted the Debtor concerning the transactions. During the pendency of this case, the Debtor's President has been storing these trailers on the Debtor's premises rent free. The Debtor's President has also collected rental payments when these units were leased to customers during the pendency of this case.

The Debtor did not disclose these transactions or other business dealings with its President in its Disclosure Statement or in its Plan of Reorganization.

Pursuant to 11 U.S.C. § 1144, the Court may, on a request of a party in interest before 180 days after the date of entry of the order of confirmation, revoke such order if the Order was procured by fraud. The application of Section 1144 to a particular set of facts and circumstances poses three general questions.

(1) Was fraud involved in the case?

(2) Was the order of confirmation procured by such fraud?

(3) What is the appropriate remedy if the order was procured by fraud?

Since the Congress did not define what constitutes "procured by fraud" for purposes of revoking confirmation, the question is left to judicial construction.

*In re Michelson,* 141 B.R. 715, 724 (Bankr. E.D.Cal.1992).

An intent to defraud may be established by circumstantial evidence based upon a consideration of all the facts and circumstances of a case. *In re Devers,* 759 F.2d 751, 754 (9th Cir.1985).

A failure to disclose material information that is known by an entity that is obligated to make such a disclosure, can be a basis for revocation of an order of confirmation. *In re Angela Giguere,* 165 B.R. 531, 534 (Bankr.R.I.1994); *In re Michelson, supra* at 715. *See also In re Van Horne,* 823 F.2d 1285, 1288 (8th Cir.1987).

In the circumstances presented here, the Debtor's officers failed to disclose that the Debtor's President was collecting $5,000.00 each month from the estate assets as a consulting fee in addition to her regular salary; and the Debtor's officers failed to disclose that the Debtor's President was using the Debtor's employees and the Debtor's personal property to acquire and dispose of other personal property for her own personal gain; and the Debtor's officers failed to disclose that they had diverted monthly rentals that had been collected by the Debtor prior to and after the commencement of this case, from the Debtor to the Debtor's President. These omissions were material to the administration of this estate and to the process of confirmation. *Mertz v. Rott,* 955 F.2d 596, 598 (8th Cir.1992); *In re Olson,* 916 F.2d 481, 484 (8th Cir.1990).

The failure to disclose these transactions was a fraud upon the Debtor's creditors and a fraud upon the Court. The Order that confirmed the Debtor's plan was procured by these fraudulent omissions.

The determination of an appropriate remedy under Section 1144 requires a consideration of the interests of all parties as well as an appreciation of the need to preserve the integrity of the Bankruptcy system. Section 1144 does not mandate revocation of the order of confirmation after a finding of fraud in the procurement. Rather, a court may revoke the order of confirmation or take such action as is equitable and appropriate. In most instances when revocation is inappropriate, courts have entered findings and conclusions, denied requests to set aside the order of confirmation, and directed that other forms of redress be pursued.

After a plan had been substantially consummated, and no effective relief could be fashioned, a Bankruptcy Court refused to revoke the order of confirmation in *Chang v. Servico, Inc.,* 161 B.R. 297, 300 (Bankr. S.D.Fla.1993). A Bankruptcy Court also declined to revoke confirmation when millions of dollars had been disbursed to many entities that were not parties to the revocation action, and the confirmation process had sufficiently advanced that effective relief could not be fashioned. *In re The Circle K Corp., et al.,* 171 B.R. 666, 668 (Bankr.D.Ariz.1994).

In the matter being considered here, the confirmed plan is a liquidating plan; the disbursements that have been made under the plan have been paid to the major secured creditor which may have been entitled to receive these payments even if the plan had not been confirmed; and at the conclusion of this trial, the parties indicated that if the Court were to order revocation of the confirmation order, they were not aware of any special provisions that might be necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation. *See* Section 1144(1), Title 11, United States Code. Furthermore, the record indicates that there are a substantial number of estate

assets that remain to be liquidated. Therefore, the Court has determined that the plan has not been substantially consummated and that revocation of the Order of Confirmation will be an effective remedy in this case. Appropriate language will be included to protect those valid distributions that have already been made under the confirmed plan.

The record at this trial has indicated that current management is incapable of operating the Debtor's business consistent with the requirements of the Bankruptcy Code and in a manner that is in the best interests of all creditors. The Plaintiff has therefore established that cause exists to grant its motion to reconsider its pre-confirmation motion to appoint an Operating Trustee. By a separate order, the United States Trustee will be directed to appoint a trustee whose duties will include an examination of the Debtor's dealings with its officers and directors and other insiders.

### ORDER

On consideration of the record as a whole, and consistent with the Memorandum in this matter,

IT IS ORDERED that this Adversary Proceeding and the related matters are concluded; and that judgment on the Complaint of Curt Ogden ("Plaintiff") is entered in favor of the Plaintiff and against Ogden Modulars, Inc. ("Defendant"); and that the Order of Confirmation of the Debtor's Plan of Reorganization, entered on June 30, 1994 (Document No. 101) is revoked and set aside pursuant to 11 U.S.C. § 1144; and

That any valid distributions or payments made to secured creditors under the confirmed plan are preserved and are not to be set aside as a result of the revocation of the Order of Confirmation.

IT IS FURTHER ORDERED that, cause having been shown, and pursuant to 11 U.S.C. § 1104(a)(1) and (2) the Plaintiff's motion Number 118 to reconsider a previous order (Document No. 117) entered on December 14, 1994 that denied a motion to appoint a trustee is granted; and that in view of the revocation of the Order of Confirmation, and on consideration of the record as a whole, the Plaintiff's motion to appoint a Trustee (Document No. 95) is granted; and that the United States Trustee is to appoint an Operating Trustee with all the duties and responsibilities conveyed upon a Trustee by the Bankruptcy Code, and additionally with the responsibility to examine the Debtor's pre and post-petition dealings with its officers and directors and other insiders, including the transactions described in the trial of this Adversary Proceeding.

IT IS FURTHER ORDERED that in view of the revocation of the Order of Confirmation, the "Fifth Order Authorizing Continued Use of Cash Collateral and the Granting of Adequate Protection in Accordance With the Provisions of the Final Order Approving Second Stipulation and Agreement for the Use of Cash Collateral and for Adequate Protection, Dated October 1, 1993", entered as Document No. 102 on July 5, 1994 is extended until further order of the Court.