**TENN–FLA PARTNERS, a Tennessee General Partnership, Appellant,**

v.

**FIRST UNION NATIONAL BANK OF FLORIDA, as Trustee, Appellee.**

No. 94–3038–TUV.

United States District Court, W.D. Tennessee, Western Division.

Jan. 15, 1999.

**724**

Frank J. Glankler, Jr., Glankler Brown Gilliland Chase Robinson & Raines, Memphis, TN, Bruce A. Markell, Indiana University School of Law, Bloomington, IN, Henry C. Shelton, III, Krivcher Magids, Memphis, TN, for appellant.

Michael P. Coury, Waring Cox, Memphis, TN, Robert T. Hyde, Jr., Rogers Towers Bailey Jones & Gay, Jacksonville, FL, for appellee.

## ORDER ON BANKRUPTCY APPEAL

TURNER, District Judge.

Appellant Tenn–Fla Partners ("TFP") appeals the decision rendered by the Bankruptcy Court for the United States District Court for the Western District of Tennessee which revoked a prior order of confirmation by that court on TFP's Chapter 11 plan· of reorganization. 170 B.R. 946 (Bankr.W.D.Tenn. 1994). The primary issue on appeal is whether the bankruptcy court was correct in finding that TFP committed fraud under 11 U.S.C. § 1144 such that the revocation of confirmation was warranted.

### I. *Standard of Review*

■ A district court reviews the bankruptcy court's findings of fact for clear error and the bankruptcy court's conclusions of law de novo. *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 106 F.3d 1255, 1259 (6th Cir.) (citing Bankruptcy Rule 8013), *cert. denied,* —— U.S. ——, 118 S.Ct. 65, 139 L.Ed.2d 27 (1997).

■ "A factual finding will only be clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Ayen,* 997 F.2d 1150, 1152 (6th Cir.1993) (internal quotations and citations omitted). A district court should not disturb the bankruptcy court's findings of fact "unless there is most cogent evidence of mistake of justice." *Newton v. Johnson (In re Edward M. Johnson & Assocs., Inc.)*, 845 F.2d 1395, 1401 (6th Cir. 1988) (internal quotations and citations omitted).

### II. *Background*

TFP is a Tennessee general partnership whose primary asset was an apartment property located in Florida ("the property"). TFP acquired the property in 1984 and refinanced the first mortgage in 1989 through $12,685,000 worth of tax-exempt bonds issued by Florida Housing Finance Agency. The appellee, First Union National Bank of Florida, is the bond trustee.

TFP filed a Chapter 11 petition and related schedules on July 17, 1992. The schedules listed its major secured debt as the bonds, and its only substantial asset as the property with an estimated value of $6,000,-000. On December 16, 1992, TFP filed its original plan of reorganization.

First Union challenged TFP's valuation of the property, and on April 22, 1993, the bankruptcy court found the value of the property to be $9,100,000.[1] First Union subsequently filed its own plan of reorganization.

---

1. The bonds were non-recourse, leaving any potential recovery to be determined by the value of

Both the TFP and First Union plans were amended several times, with each amendment reflecting additional cash to be paid for the property and the bonds. TFP's amended plan also provided that upon acceptance the bondholders would rescind their § 1111(b)(2) election filed August 31, 1993.[2]

The bankruptcy court approved the disclosure statements for the plans on November 24, 1993, and the competing plans and solicitation materials were mailed to creditors for their acceptance or rejection. The bondholders accepted both plans.

At a recess from the confirmation hearing held January 14, 1994, TFP agreed to increase its monetary offer to match the offer contained in First Union's plan. First Union withdrew its objection to the confirmation of TFP's plan and recommended confirmation. After an oral offer of proof with respect to TFP's compliance with the requirements of § 1129(a), the bankruptcy court confirmed TFP's plan. Under the confirmed plan, TFP agreed to pay $9,885,000 (about $350,000 of which would go to First Union as part of an administrative claim) for the property and the bonds. This resulted in an approximate 75% recovery to the bondholders, with the shortfall being discharged.

Shortly after confirmation, TFP contracted to sell the bonds and the property to United Dominion for $12,443,547, resulting in an apparent net recovery to TFP of approximately $2,500,000 over the amounts necessary to pay the bondholders and other creditors under its plan. First Union subsequently filed suit to revoke the bankruptcy court's order of confirmation so that First Union might recover the excess proceeds for the bondholders. First Union claimed TFP knew of the property's true value and under-represented that value at the confirmation proceeding so that any excess proceeds from the sale of the property would benefit TFP's equity holders.

The bankruptcy court allowed TFP to proceed with the sale of the bonds and property to United Dominion and to make certain distributions required under the plan, but required TFP to place the excess in escrow pending a determination on First Union's claim.

The bankruptcy court made several factual findings, based on documentary and testamentary evidence, including:[3]

a) First Union's interest was in getting the highest possible price for the property.

b) United Dominion, through its representative Benjamin Norbom, was told about the property in the fall of 1993. TFP and United Dominion had continuous discussions between August 1993 and October 1993 concerning United Dominion's interest in the property. Although TFP claimed it only discussed financing with United. Dominion, the bankruptcy court found any discussion of financing was premised on United Dominion having an option to purchase the property.

c) Ray Coleman, the property manager, was told in November of 1993 by Jack Friedman, a broker, that Colonial Properties was interested in purchasing the property. Coleman told Colonial's representative that the property was in bankruptcy and would not be available for sale until after bankruptcy. Colonial kept in constant contact with Coleman, and ultimately made a $12,250,000 offer for the property on or about February 4, 1994.

d) Coleman was told by Cole Whitaker, a broker, in late 1993 that JMB Institutional Realty wanted an exclusive right to purchase the property. Coleman told a JMB representative that the property was in bankruptcy and that no offers could be accepted until TFP's plan had been accepted by the bankruptcy court. During these discussions, JMB indicated an interest in paying in the mid-$11,000,000 range for the property. JMB's interest continued right through the confirmation process, and a JMB representative testified the only reason for their delay in making a firm offer was Coleman's refusal to deal until after TFP's plan was confirmed.

the property.

2. Unless otherwise indicated, all Chapter and Section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

3. The bankruptcy court set forth several pages of factual findings, only the most relevant of which will be addressed here. A complete discussion of the bankruptcy court's findings of fact can be found at 170 B.R. at 951–963.

e) In November of 1993, Coleman sent a solicitation letter to the bondholders urging them to accept the TFP plan. The letter represented that absent their acceptance of TFP's plan, there was a possibility that the bondholders "could be left without a buyer."

f) Coleman believed he would not get a real estate commission if the property was sold during bankruptcy. The bankruptcy court inferred from this that Coleman's primary concern may have been his own best interest.

g) Coleman told Robert Smith, the broker who eventually produced the successful offer from United Dominion, not to place further offers on the property until it was out of bankruptcy, and to have his main buyer ready as soon as TFP was out of bankruptcy.

h) TFP's partners had a personal obligation to First Tennessee Bank for approximately $2,500,000 they had borrowed to fund operating shortfalls of the property. Bryson Randolph, a consultant to TFP, testified that TFP intended to pay the bondholders a minimum amount of cash as quickly as possible and to create an investment recovery for its partners. An internal memorandum prepared by Norbom noted that United Dominion could not participate in TFP's plan of reorganization because TFP's goal was to receive approximately two million dollars in excess of the discounted value of the bonds. If United Dominion participated, First Union would seek the excess for the bondholders. The bankruptcy court inferred from the above that TFP intended to hide the true value of the property and sell soon after confirmation, using the excess proceeds to satisfy the personal obligations of TFP's equity holders.

i) Coleman was aware that he was under a duty to disclose any offers to purchase the property. While TFP did disclose an $8,000,000 offer on the property from FRM Properties, TFP did not disclose its contact with United Dominion, Colonial Properties or JMB. The bankruptcy court inferred from this that the lower offer was disclosed to play down the value of the property, while the more serious interest was hidden so the equity holders might take advantage post-confirmation.

The bankruptcy court summarized its factual findings as follows:

The court has considered all of the proof, disputed and undisputed, and has weighed the interest and credibility of witnesses. From its discussion of the proof, it is evident to the court that the debtor provided misleading and incomplete disclosures, that the debtor had serious contacts with several motivated and qualified purchasers at prices far exceeding what the debtor was offering to the bondholders, that the effect of the debtor's actions was to misrepresent the market for and market value of the property, that the debtor intentionally discouraged the submission of offers prior to confirmation, that the debtor concealed or "parked" purchasers until after the confirmation, that the debtor was motivated to accomplish its goal of protecting the investment of its insider partners by assuring payment of their recourse First Tennessee Bank debt, and that the debtor misrepresented to the court at the confirmation hearing that it was in compliance with all elements of § 5 1129(a). In summary, the debtor violated its debtor in possession obligations and engaged in self-dealing to the expense of the bondholders, who had been induced by the debtor's misrepresentations to give up their § 5 1111(b)(2) election. All of this was accomplished by the debtor without adequate disclosure to the court or to creditors until after the confirmation hearing and order.

170 B.R. at 963.

The bankruptcy court also found the undisclosed information to be material and that TFP was under a duty to disclose it. The bankruptcy court based this duty of disclosure on three separate grounds: a plan proponent's duty to comply with the disclosure requirements of § 1125; a plan proponent's duty to propose a plan in good faith; and the fiduciary duty of a debtor in possession. The court also found that as a fiduciary, TFP was not only obligated to disclose pre-confirmation interest in the property, but was obligated to maximize the value of the property for all creditors. The court found the failure to disclose the true value of the property was

fraudulent within the meaning of § 1144, in that by concealing the true value of the property TFP induced the court to believe at the confirmation hearing that TFP had fully disclosed all material information and that it had proposed its plan in good faith. The bankruptcy court revoked the order of confirmation and awarded First Union attorney's fees and expenses. The court refused to impose punitive damages on TFP, however, and did not award to First Union as compensatory damages all sums paid out of the proceeds of the sale of the property to subordinate secured and unsecured creditors. The court also converted the case to a Chapter 7 proceeding and directed the United States Trustee to appoint an interim trustee.

### III. *Burden of Proof*

The bankruptcy court determined that fraud under § 1144 must be established by a preponderance of the evidence. TFP argues that determination was in error, and urges this court to find that fraud under § 1144 must be established by clear and convincing evidence. Section 1144 provides that:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall—
>
> (1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and
>
> (2) revoke the discharge of the debtor.

Section 1144 does not state the appropriate evidentiary standard, and there are no decisions interpreting the standard to be applied.

In support of its position, TFP asserts that the confirmation of a plan of reorganization is a type of final federal judgment, and that Rule 60(b)(3) of the Federal Rules of Civil Procedure should be applicable.[4] TFP then cites numerous authorities for the proposition that the fraud necessary to set aside a final federal judgment under Federal Rule of Civil Procedure 60(b)(3) must be proven by clear and convincing evidence. Therefore, TFP urges this court to hold that the fraud necessary to allow a court to revoke a plan of reorganization under § 1144 must also be proven by clear and convincing evidence.

■ Federal Rule of Civil Procedure 60(b) is generally applicable in bankruptcy proceedings. *See* Fed.R.Bank.P. 9024 (making Federal Rule of Civil Procedure 60 applicable to cases under the Bankruptcy Code). Federal Rule of Civil Procedure 60(b)(3), however, is not applicable in this proceeding. As will be discussed infra, § 1144 allows a bankruptcy court to revoke an order of confirmation where fraud has been practiced on the court. Fraud upon the court is a distinct ground under Federal Rule of Civil Procedure 60(b) that is distinguishable from fraud between the parties under Rule 60(b)(3) that would entitle a party to relief. 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2870 (1995). Indeed, Federal Rule of Civil Procedure 60(b) states that "[t]his rule does not limit the power of a court ... to set aside a judgment for fraud upon the court." Thus, Federal Rule of Civil Procedure 60(b)(3) is inapplicable to this proceeding. Moreover, as will be discussed infra, courts have relaxed the traditional requirements for a showing of a fraud upon the court in the context of revoking a bankruptcy court's order. These courts have found that the legitimacy of the bankruptcy process outweighs the need for finality where a party with a duty to disclose has committed fraud by intentionally concealing material facts. Therefore, this court finds that the use of the preponderance of the evidence standard will not offend the need for finality inherent in the Bankruptcy Code.

In *Grogan v. Garner,* the Supreme Court held that the preponderance of the evidence standard, rather than the clear and convincing evidence standard, applies in determining whether any of the exceptions to discharge under § 523(a), including the exception for fraud, are applicable. 498 U.S. 279, 286–91,

---

4. Federal Rule of Civil Procedure 60(b)(3) provides, in pertinent part, that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... fraud."

111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The Court noted that "[b]ecause the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless particularly important individual interests or rights are at stake."

While no court has determined the applicability of *Grogan* to § 1144, several courts have applied *Grogan* to analog provisions of the Bankruptcy Code. Just as the confirmation of a plan of reorganization may be revoked for fraud under § 1144, so may a court's confirmation of a debtor's Chapter 13 plan be revoked for fraud. *See* § 1330(a). Courts have found that fraud under § 1330 need only be proven by a preponderance of the evidence. *Nikoloutsos v. Nikoloutsos,* 222 B.R. 297, 303 (E.D.Tex.1998) (approving of the use of preponderance of the evidence standard under § 1330(a)); *Laurel Fed. Credit Union v. Hoppel (In re Hoppel),* 203 B.R. 730, 734 (Bankr.D.Mont.1997). Similarly, just as the debtor's discharge may be revoked for fraud under § 1144, so may a court's granting of a discharge under Chapter 7 be revoked for fraud. *See* § 727(d). Nevertheless, numerous courts, almost all of which rely on *Grogan,* have found that revocation of a discharge due to fraud under § 727(d) only requires fraud to be proven by a preponderance of the evidence. *See, e.g., Citibank, N.A. v. Emery (In re Emery),* 201 B.R. 37, 40 (S.D.N.Y.1996), *aff'd,* 132 F.3d 892 (2d Cir.1998); *Bowman v. Belt Valley Bank (In re Bowman),* 173 B.R. 922, 925 (9th Cir. BAP 1994); *Kaler v. Olmstead (In re Olmstead),* 220 B.R. 986, 993 (Bankr.D.N.D. 1998); *Borock v. Telesz (In re Ventimiglia),* 198 B.R. 205, 212 (Bankr.E.D.Mich.1996). *See also* Rosemary Williams, Annotation,

*Creditor's Right to Have Bankruptcy Discharge of Individual Debtor Revoked, Vacated, and Set Aside,* 138 A.L.R. Fed 253, 314 (1997) (finding evidentiary standard of proof applicable in revocation actions is now proof by preponderance of the evidence, and collecting cases in support).[5]

TFP argues that *Grogan* should not control, however, because the finality of reorganization plans deserves the extra protection afforded by the more stringent clear and convincing standard. TFP distinguishes *Grogan* as an action between a specific creditor and the debtor over a specific debt with no effect on other parties to the bankruptcy proceeding. When an action to revoke the confirmation of a reorganization plan is at issue, TFP asserts, the court should apply the heightened standard because the result will affect the relationship between the debtor and all creditors, regardless of whether they choose to intervene.

There are several problems with TFP's rationale. First, revocation of a debtor's plan under § 1330 also affects the rights of all creditors, but courts have still applied the preponderance of the evidence standard. *See supra.* Second, cases interpreting the appropriate standard to be applied under § 727(d) recognize that revocation of a discharge is an extraordinary remedy. *See, e.g., In re Bowman,* 173 B.R. at 924; *In re Ventimiglia,* 198 B.R. at 213–14. Nevertheless, those courts applied the preponderance of the evidence standard. Third, TFP's argument is contrary to the rationale underlying the Sixth Circuit's decision in *Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams),* 31 F.3d 389 (6th Cir.1994). In *In re Adams,* the court found *Grogan's* reasoning was equally applicable to the exceptions to discharge under § 727(a), and thus held these exceptions,

---

**5.** TFP agrees that the level of evidentiary proof required by courts in revocation cases under Chapters 7 and 13 is highly relevant. TFP cites *In re Szostek,* 93 B.R. 399, 403 (Bankr.E.D.Pa. 1988), *aff'd,* 886 F.2d 1405 (3d Cir.1989), and *In re Scott,* 77 B.R. 636, 637 (Bankr.N.D.Ohio 1987), as establishing that the appropriate standard of proof under § 1330(a) is clear and convincing evidence. The court affords little weight to these cases, however, because both were decided prior to *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). For the

same reason, the court discounts the holding of *In re Siciliano,* 167 B.R. 999, 1014 (Bankr. E.D.Pa.1994), which without analysis relied on *In re Scott* and determined that the correct standard "appears to be" proof by clear and convincing evidence.

TFP also cites *Wood v. Cochard (In re Cochard),* 177 B.R. 639, 642 (Bankr.E.D.Mo.1995), where the court adopted the clear and convincing evidence standard in an action under § 727(d). The court finds *In re Cochard* to be against the clear majority and expressly disagrees with it.

including the exception for fraud, must only be established by a preponderance of the evidence. *Id.* at 394. Section 727(a) affects not only the debtor and a specific creditor, but the relationship between the debtor and all its creditors, as it prohibits a court from granting the debtor a general discharge where the debtor has committed fraud. Accordingly, the court finds that revocation of a confirmed plan under § 1144 does not pose any special problems that might prevent this court from applying the preponderance of the evidence standard.[6]

The bankruptcy court also found that there were no "particularly important individual interests or rights at stake," which would preclude a court from using the presumptively correct preponderance of the evidence standard. *See Grogan,* 498 U.S. at 286, 111 S.Ct. 654. TFP urges this court to find that the reputations of TFP's partners and several witnesses are in jeopardy, which constitute important individual interests. It is true that courts have found that an individual's reputation can be of particular importance. *See, e.g., Disner v. Westinghouse Elec. Corp.,* 726 F.2d 1106, 1111 (6th Cir.1984). Nevertheless, it is implicit in *Grogan* that in this context the mere possibility of damage to an individual's reputation is insufficient to invoke the clear and convincing evidentiary standard.

*Grogan* involved several creditors who alleged that the debtor had defrauded them. Rather than applying the clear and convincing evidentiary standard to protect the reputation of the debtor, however, the Court applied the preponderance of the evidence standard. Thus, mere allegations that a debtor engaged in fraudulent conduct are insufficient to invoke the higher standard. Otherwise, every debtor accused of fraud could allege that his or her reputation is at stake, thus undermining the Court's holding that the correct standard to apply is the preponderance of the evidence standard. Therefore, this court finds that the debtor

must offer specific compelling evidence of potential damage to reputation in order to invoke the important individual interests exception to the preponderance of the evidence standard.

TFP argues that the reputation of Dr. Meyer, a partner in TFP and a world famous surgeon and philanthropist of note, is at issue. TFP has not established how a finding against TFP will damage Dr. Meyer's reputation as a surgeon, or why his reputation is any more important than that of the debtor in *Grogan.* Similarly, TFP has failed to establish the relative importance of the brokers' reputations, or how they might be tarnished. Last, TFP argues that the bankruptcy court did not believe the testimony of several individuals who represent United Dominion, which might subject them to further legal action for perjury or securities law violations. The court notes that the bankruptcy court made no findings of perjury, and finds these interests too tenuous to serve as the "particularly important individual interests" required by *Grogan* to invoke the clear and convincing standard of review.

■ Accordingly, the court finds the bankruptcy court was correct in using the preponderance of the evidence standard in determining whether TFP committed fraud. A preponderance of the evidence is proof which leads the fact finder to conclude "that the existence of a fact is more probable than its nonexistence." *In re Winship,* 397 U.S. 358, 371, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring).

## IV. The Elements of Fraud Under Section 1144

■ Section 1144 is the only provision under the Bankruptcy Code that allows a court to revoke an order confirming a plan of reorganization. *In re Longardner & Assocs., Inc.,* 855 F.2d 455, 460 (7th Cir.1988); *Kelly v. Giguere (In re Giguere),* 165 B.R. 531, 534 (Bankr.R.I.1994). Section 1144 allows a

---

6. The court recognizes that there is a compelling reason for the finality of reorganization plans. The focus of Chapter 11 is on rehabilitation, which benefits all parties to the proceeding. Thus, the court realizes that *revocation of confirmation is an extraordinary remedy.* Neverthe-

less, the court fails to see how it is any more extraordinary than revocation of confirmation in Chapter 13, revocation of a discharge under Chapter 7, or denial of a discharge under Chapter 7.

court to revoke the order "if and only if such order was procured by fraud." For the order of confirmation to be revocable, therefore, fraud must be directed at the court. *In re Longardner & Assocs., Inc.*, 855 F.2d 455, 460 (7th Cir.1988); *First Union Nat'l Bank v. Perdido Motel Group, Inc.*, 142 B.R. 460, 464 (N.D.Ala.1992); *United States v. Kostoglou (In re Kostoglou)*, 73 B.R. 596, 599 (Bankr.N.D.Ohio 1987). There is no requirement that a creditor rely on the fraud. *In re Kostoglou*, 73 B.R. at 599.[7]

■ While § 1144 does not define the term "fraud," "fraud on the court" has been defined as "a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Harbold v. Commissioner*, 51 F.3d 618, 622 (6th Cir.1995) (internal quotations and citations omitted). In the context of revoking an order of confirmation under § 1144, this can be restated as requiring:

(1) a representation by the debtor regarding compliance with § 1129;

(2) which was materially false;

(3) that was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard for the truth;

(4) that was made to induce the court to rely upon it;

(5) that the court did rely upon; and

(6) that as a consequence of such reliance, the court entered the confirmation order. *See In re Longardner & Assocs., Inc.*, 855 F.2d at 462 n. 6. (chapter 13); *Perdido Motel Group*, 142 B.R. at 464.

■ Ordinarily, a party's failure to disclose material facts to the court does not rise to the level of fraud on the court. *First Nat'l Bank v. Lustig*, 96 F.3d 1554, 1573 (5th Cir.1996). More egregious conduct, such as the fabrication of evidence or the bribery of a judge or jury is generally required. *Id.* In actions to revoke a bankruptcy court's order, however, courts have been more willing to examine the disclosures of a party with the duty to disclose for fraudulent omissions. *See, e.g., S.N. Phelps & Co. v. Circle K Corp. (In re Circle K Corp.)*, 181 B.R. 457, 463–65 (Bankr.D.Ariz.1995); *Ogden v. Ogden Modulars, Inc. (In re Ogden Modulars, Inc.)*, 180 B.R. 544, 547 (Bankr.E.D.Mo.1995); *In re Giguere*, 165 B.R. at 534–36; *Official Com-*

---

7. TFP asserts that First Union, had it been "mildly diligent," could have discovered the true value of the property. TFP also asserts that there is no showing that First Union ever relied on TFP's assertions (or lack thereof). TFP therefore argues that First Union's access to the information and/or lack of reliance precludes a finding that First Union was defrauded. As noted by the bankruptcy court, "[t]hose arguments miss the critical point that the *court* was deceived in its decision to confirm the debtor's plan when the debtor knowingly concealed information about true market value and willing purchasers of the debtor's sole asset." (emphasis added).

To the extent TFP's argument implies that First Union had some knowledge of the fraud prior to confirmation, the court finds the argument is still without merit. Collier is instructive on this point.

There is also no requirement in section 1144 that the person seeking revocation of the confirmation order was unaware of the fraud at the time of confirmation. [The predecessor to section 1144] required the party desiring to have a plan revoked demonstrate that it was not aware of the fraud at the time the plan was confirmed. Section 1144 imposes no such burden on the party seeking revocation.

. . .

This concept is important because one of the more common defenses against an action to revoke a confirmation order is that the party seeking revocation either knew about the fraud or should have been able to uncover the fraud at the time of confirmation. The knowledge of the plaintiff in a revocation action is not strictly relevant and a defendant's raising of the issue distracts from the true issue in an action under section 1144, whether the order of confirmation was procured by fraud.... A party seeking confirmation of a plan has an affirmative duty of disclosure and good faith. If it is breached, and the breach amounts to fraud, there is a basis for revoking the confirmation order.... Nevertheless, if it has been demonstrated that the party seeking revocation did have actual knowledge of the fraud, it should have to justify its failure to call the fraud to the court's attention.

8 *Collier on Bankruptcy* ¶ 1144.03(2) (Lawrence P. King ed., 15th ed.1998). The bankruptcy court's factual findings indicate First Union had no knowledge of the true interest in the property, and the court finds no clear error in those findings. Thus, there is no demonstration that First Union had actual knowledge of the fraud such that it might be required to justify its silence.

mittee of Unsecured Creditors v. Michelson (In re Michelson), 141 B.R. 715, 725 (Bankr. E.D.Cal.1992).[8] These courts have determined fraudulent intent can be shown where "a person who (1) is obligated to disclose, (2) knows of the existence of material information, and (3) does not disclose it." In re Giguere, 165 B.R. at 534 (quoting In re Michelson, 141 B.R. at 725). This broader examination of a plan proponent's conduct is based on good reason. The integrity of the confirmation process is dependent on a plan proponent's honest compliance with the requirements of § 1129.

The test for fraud under § 1144 can be restated to account for a party's non-disclosures as follows:

(1) an intentional omission;

(2) by a party with a duty to disclose;

(3) of facts that would be material to finding the party complied with § 1129;

(4) that were withheld so that the court would find the party complied with § 1129;

(5) and that as a consequence of such non-disclosure, the court entered the confirmation order.

■ The court finds the burden of establishing these elements falls on the party challenging the confirmation. See, e.g., In re Barnett, 216 B.R. 202, 205 (Bankr.N.D.Ohio 1997) (placing burden on movant to show debtor's Chapter 13 filing was in bad faith); Carter v. Peoples Bank and Trust Co. (In re BNW, Inc.), 201 B.R. 838, 845 (Bankr. S.D.Ala.1996) (placing burden of proof on plaintiff to set aside confirmation order in Chapter 11); Hunter v. Hall (In re Hall), 84 B.R. 472, 474 (Bankr.N.D.Ohio 1987) (placing burden of proof on the plaintiff in revocation action under § 727(d)).

## V. The Bankruptcy Court's Findings of Fraud

■ The bankruptcy court found that through non-disclosures TFP intentionally misrepresented at the confirmation hearing that it proposed its plan in good faith, that it complied with the Code's disclosure requirements, and that it complied with its fiduciary duty to its creditors, as required by § 1129(a)(2)–(3).[9] The court further found that the misrepresentations were directed at the court, and that the misrepresentations impaired the court's ability to confirm the plan in an impartial manner. In light of the above standards, this court must determine whether the bankruptcy court was in clear error in finding a preponderance of the evidence supported its factual determinations, and must examine de novo whether the bankruptcy court's factual determinations were legally sufficient to fulfill the elements of fraud under § 1144.

### 1. An Intentional Omission

■ The question of intent is generally considered to be one of fact. United States v. Hopkins, 357 F.2d 14, 18 (6th Cir.1966). The bankruptcy court found that prior to confirmation, TFP knew of several qualified purchasers who were actively interested in purchasing the property and the bonds for more than TFP was offering in its plan. Rather than disclosing this interest, the bankruptcy court found TFP intentionally concealed it so that it could sell the property after confirmation at a price far exceeding its obligations under the plan, thus retaining the excess proceeds for the benefit of the equity holders. In effect, the bankruptcy court found TFP had engaged in a form of self-dealing.

This court has reviewed the record and has set out earlier in this order several factual findings of the bankruptcy court. These facts offer strong support for the bankruptcy

8. In any event, the Sixth Circuit has relaxed the requirements for a finding of fraud on the court and has indicated a willingness to examine a party's withholding of information for fraud. See Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir.1993) (finding Justice Department attorneys were reckless in their failure to disclose certain information to the other party or the court).

9. The transcript of the confirmation hearing shows the bankruptcy court asking for an oral offer of proof that the elements of § 1129 were met. TFP's attorney responded "Yes sir, good faith and all identities disclosed and all classes accept and better than liquidation."

court's conclusion that TFP intentionally concealed the true interest in the property for its own benefit. These facts also distinguish this case from the cases cited by TFP where courts have found that a debtor's innocent misrepresentations of property value are not grounds for revocation. *See In re Pence*, 905 F.2d 1107, 1110–11 (7th Cir.1990); *Midlantic Nat'l Bank v. Kouterick (In re Kouterick)*, 161 B.R. 755 (Bankr.D.N.J.1993); *Stamford Municipal Employees Credit Union, Inc. v. Edwards (In re Edwards)*, 67 B.R. 1008, 1011 (Bankr.D.Conn.1986).

TFP disagrees with the bankruptcy court's related conclusion that it was TFP's strategy to hide the true interest in the property so it could sell the property at an excess value shortly after confirmation. TFP argues there was no evidence of an intent to sell or evidence of a pre-confirmation deal. Evidence of a pre-confirmation deal is not necessary to find that TFP intended to make a deal with one of several interested buyers shortly after confirmation. The bankruptcy court found TFP put off several interested buyers in an attempt to take advantage of their interest for TFP's equity holders, who needed the excess funds to bail them out from recourse debt they had incurred to float operating shortfalls of the property. Several of the many pieces of evidence in support of this finding are set out earlier in this opinion, and are enough that this court cannot find clear error in the bankruptcy court's determination that TFP intended to sell the property shortly after confirmation.

Accordingly, the court finds the bankruptcy court did not clearly err in finding by a preponderance of the evidence that TFP intentionally concealed the true interest in the property, and that it intended to take advantage of this interest by selling the property shortly after confirmation.[10]

### 2. Duty to Disclose

■■■ It is axiomatic that the person charged with fraud on the court for nondisclosure must have had an obligation to disclose those facts to the court. *See United States v. Twitty*, 44 F.3d 410, 413 (6th Cir. 1995). As discussed above, the duty under this factor contemplates the debtor in possession's duty to the court, not to the creditors. Whether TFP had a duty to disclose the true interest in the property under the Code is a question of law, which this court reviews de novo.

The bankruptcy court found three separate provisions of the Code required TFP to disclose the true interest in the property. First, the court found § 1125 required TFP to make adequate disclosures. Second, the court found § 1129(a)(3) required TFP to propose its plan in good faith. Third, the court found § 1107 placed on TFP all the duties of a trustee, including a fiduciary duty.

#### A. Section 1125

The bankruptcy court found that § 1129(a)(2) requires that the plan proponent comply with all other applicable provisions of the Bankruptcy Code, including the adequate disclosure requirements of § 1125. This court agrees with the bankruptcy court's conclusion that § 1125 required TFP to make

---

10. TFP argues that the Code provides adequate protection of disclosures because they are tested twice in a normal bankruptcy case: once when the disclosure statement is approved, and again at confirmation, and that relitigation of the property's value, which First Union had previously contested, is unwarranted. *See In re Szostek*, 886 F.2d 1405 (3d Cir.1989).

This argument is without merit. Where the plan proponent intentionally does not make a full disclosure the protections of §§ 1125 and 1129 are inadequate, and an injured party may seek to revoke confirmation under § 1144.

*Absent substantial new evidence of fraud*, there is no reason why Congress would have wished, or the courts should permit, participants who actively participated in the reorganization to relitigate in later civil actions previously raised issues about the adequacy of the disclosure statement, or to reserve for such actions claims that feasibly could have been made in the reorganization.

*Kaufman v. Public Service Co. (In re Public Service Co.)*, 43 F.3d 763, 768 (1st Cir.1995) (emphasis added). The bankruptcy court found the evidence "does not support the argument that knowledge of the property's potential was equally available prior to confirmation to First Union or the court." The court finds no clear error in the bankruptcy court's determination and finds First Union may proceed under § 1144.

adequate disclosures.[11]

The bankruptcy court also found that under the circumstances, TFP's disclosures were not adequate. This is a question of fact that will only be reversed if in clear error. Section 1125 defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable ... that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." § 1125(a)(1). "Adequate information" generally includes a complete description of the available assets and their value and the anticipated future of the debtor. *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170 (Bankr.S.D.Ohio 1988).

TFP argues that the bankruptcy court's factual finding that the contacts were material enough to require disclosure is clearly erroneous. TFP asserts that since only a very small number of broker contacts ever result in sales, it did not believe such contacts were worth reporting. Essentially, TFP argues that in its judgment, the contacts were not material and did not need to be reported. The bankruptcy court entertained these same arguments and found that these contacts could potentially result in several million dollars more than what TFP was offering. The bankruptcy court also found TFP disclosed interest in the property by FRM, whose interest was worth several million dollars less than the undisclosed interest of JMB, Colonial and United Dominion.

TFP also argues that it did not report the interest to First Union because First Union was only interested in an all cash, non-contingent sale. TFP's argument is spurious. Prior to confirmation, TFP was still in com-petition with First Union's plan for the bondholders' favor. First Union's plan was based on two competing offers for the property and the bonds, both of which contained several contingencies. TFP points this out to the bondholders in its solicitation letter:

> This letter will discuss the distinctions between [TFP's] plan and the very contingent real estate purchase offers [underlying First Union's plan] ....
>
> ....
>
> ... [TFP] has indicated its interest by filing a new plan free of all contingencies but three, two of which may be fulfilled by the Bankruptcy Court ... [The prospective buyers under First Union's plan] have not filed plans at all; rather, they have given [First Union] conditional agreements to purchase the Bonds and Property which [First Union] has fashioned into a plan....
>
> ....
>
> The failure of [TFP's] plan will deny you the benefit of a commitment to purchase all of the Bonds for $9,200,000. At that point the creditors of this entire estate ... will have only two contingent offers to purchase real estate approved by the Court. You will have turned down a single cash offer for a highly conditional set of promises.

TFP's solicitation letter then continues by comparing the three contingencies set out in TFP's plan against the fifty-five contingencies set out in First Union's plan.[12] While it is true that First Union may have preferred non-contingent, all-cash offers, and that it told buyers who had contacted it directly that such offers were more likely to be successful, it is disingenuous for TFP to argue that First Union would not have been willing to consid-

---

**11.** Courts have found § 1125 to be one of the applicable provisions of the Code referred to in § 1129. *See, e.g., In re Trans World Airlines, Inc.*, 185 B.R. 302, 313 (Bankr.E.D.Mo.1995) ("The principal purpose of section 1129(a)(2) of the Bankruptcy Code is to assure that the plan proponents have complied with the disclosure requirements of section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the plan.").

**12.** TFP essentially argues that it created an auction-like atmosphere where the bondholders were guaranteed a cash sale, which is what they wanted. TFP argues that the bondholders had no interest in taking an ownership interest in the property, and that it therefore limited "bidders" to those who were willing to make a non-contingent cash payment. This course of conduct, TFP argues, allowed it to get the highest non-contingent cash sale for the bondholders while still maintaining its fiduciary duty, discussed later in this order, to the equity holders to retain any excess value.

er additional contingent offers for several million dollars more than the contingent offers that formed the basis for First Union's plan.

This court agrees with the bankruptcy court's factual conclusion that the existence of purchasers who potentially were willing to pay substantially more than was being offered by the proposed plan is information that would be needed by a hypothetical investor to make an informed judgment about the plan. Accordingly, the court finds TFP had a duty under § 1125 to disclose the information.

### B. *Good Faith*

Although the term "good faith" is not defined by the Code, there is substantial case law interpreting the requirements of good faith.

> Under one view, the good faith requirement of § 1129(a)(3) is met if the plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code. Under another view, the good faith requirement is met if the plan was proposed with honesty and good intentions, and with a basis for expecting that a reorganization can be effected. Under a third view, good faith requires fundamental fairness in dealing with one's creditors.

*In re Gregory Boat Co.,* 144 B.R. 361, 366 (Bankr.E.D.Mich.1992) (citations omitted). A determination of good faith requires a bankruptcy court to consider the totality of the circumstances. *Society Nat'l Bank v. Barrett (In re Barrett),* 964 F.2d 588, 591 (6th Cir.1992) (Chapter 13); *In re Crosscreek Apartments, Ltd.,* 213 B.R. 521, 549 (Bankr. E.D.Tenn.1997). A determination of good faith under the totality of the circumstances is essentially a factual inquiry and will only be reversed if clearly erroneous. *In re Barrett,* 964 F.2d at 591.

The bankruptcy court found that TFP was obligated to disclose the true interest in the property in order to comply with the Bankruptcy Code's requirement that a plan be proposed in good faith. *See* § 1129(a)(3). TFP argues it could not have been in bad faith because it "subjectively thought it was achieving an end permitted by the Bankruptcy Code." The bankruptcy court, however, found TFP "knew of willing and able buyers but temporarily spurned their offers and 'parked' their interests, all for the purpose of preventing the secured bondholders from realizing or capturing the true value of their collateral. The court may not simply call this creative reorganization, when the debtor's strategy, inter alia, undermines the integrity of the chapter 11 process." This court finds no clear error in the bankruptcy court's determination, and accordingly finds TFP was required to disclose the true interest in the property to comply with § 1129(a)(3).

### C. *Section 1107*

The bankruptcy court also found that § 1129(a)(2) placed TFP, as a debtor in possession, in a fiduciary relationship with creditors of the debtor under § 1107, and that as a fiduciary TFP had the duty to disclose the interest in the property. This court agrees.

Section 1107 places upon a debtor in possession the duties of a trustee, and a debtor in possession must comply with § 1107 to be in compliance with § 1129. As a debtor in possession, TFP owed a fiduciary duty to both the estate and the court. *In re Giguere,* 165 B.R. at 535. This fiduciary duty included a duty to disclose all known material information. *Id.; In re Sal Caruso Cheese, Inc.,* 107 B.R. 808, 817 (Bankr. N.D.N.Y.1989); *F & M Marquette National Bank v. Emmer Brothers Co. (In re Emmer Brothers Co.),* 52 B.R. 385, 394 (D.Minn.1985) (finding that a debtor in possession "who fraudulently conceals an asset during the course of the bankruptcy proceedings surely violates" the "fiduciary responsibility to the bankruptcy court and its creditors"). Accordingly, the court finds that TFP was required by § 1107 to disclose the known interest in the property.

### 3. *Material Facts*

A bankruptcy court may only confirm a plan of reorganization if all the requirements of § 1129 are met. Thus, material information is information that is necessary for a court to decide whether the

elements prescribed for confirmation have been satisfied. The bankruptcy court found information on the true value of the property would be material to a finding of compliance with § 1129.

In order to confirm the proposed plan, the court must be able to make "an informed, independent judgment regarding each element of confirmation." *In re Michelson*, 141 B.R. at 720. This court finds that information on TFP's failure to disclose the true interest in the property would be material to a determination on whether TFP's plan met the Code's disclosure requirements, was proposed in good faith, and on whether TFP complied with its fiduciary duty as a debtor in possession.

### 4. *Withheld from the Court*

The bankruptcy court found that TFP's "lack of disclosure and bad faith misrepresentations were made for the purpose of obtaining an order of confirmation and the court relied upon the debtor's representations that all § 1129(a) elements were satisfied."

Why TFP withheld information is a factual inquiry that will not be reversed absent clear error. This court finds the bankruptcy court was not in clear error in finding that TFP's omissions were directed at the court so that it might obtain an order of confirmation.

### 5. *Causing the Plan to be Confirmed*

 A bankruptcy court must confirm a plan of reorganization if all the requirements of § 1129 are met. Thus, an order of confirmation can only be procured by fraudulent non-disclosures if the court would not have issued the order had it been aware of the undisclosed information.

**13.** TFP argues that even if it did conceal information from the bankruptcy court, that court's powers are limited by § 1129(a), which does not empower a court to determine if a plan is reasonable. The bankruptcy court never focused on the reasonableness of TFP's plan, however, but examined whether TFP's non-disclosures affected the court's finding that TFP had complied with the requirements of § 1129(a).

**14.** Non-disclosure of facts can amount to an interference with judicial machinery because

This court has upheld the bankruptcy court's determination that TFP intentionally concealed facts from the court that would have been material to the confirmation process so that TFP's plan would be confirmed. The bankruptcy court also held "it would not have confirmed the debtor's plan had the court known that the debtor knew of an immediate $2,300,000 equity return to insiders of the debtor." The bankruptcy court based this determination on its finding that the undisclosed interest in the property would preclude the court from confirming the plan under § 1129(a) because of inadequate disclosure, bad faith, and breach of fiduciary duty.[13]

Whether the bankruptcy court would be required to confirm TFP's plan in light of its non-disclosures is a question of law that this court reviews de novo. This court finds that if the bankruptcy court knew of TFP's true intentions at the time of confirmation it would be precluded from confirming TFP's plan because of inadequate disclosure, bad faith, and breach of fiduciary duty.

"The suppression of material facts that likely would have led to a different result unambiguously constitutes an impairment of the adjudicatory process." *In re Michelson*, 141 B.R. at 729.[14] Accordingly, the court finds the bankruptcy court correctly held it would not have confirmed TFP's plan but for TFP's fraudulent omissions.

### 6. *Summary*

The court finds all elements of the test for fraud upon the court via non-disclosure under § 1144 have been met. Accordingly, the bankruptcy court's decision to revoke its prior confirmation of TFP's plan of reorganization is affirmed.

[t]he court's duty to make an informed, independent judgment regarding confirmation issues puts the court at center stage during the confirmation process. Recalling that the statute requires that the order confirming the plan have been "procured by fraud," it is apparent that pulling the wool over the eyes of the court impairs the judicial machinery in the performance of its duty.
*In re Michelson*, 141 B.R. at 725.

## VI. *Duty to Maximize*

■ The bankruptcy court found that as a party with fiduciary duties, TFP was under a duty to maximize the value of the estate. TFP argues that the fiduciary duty of a debtor in possession is owed to both creditors and equity holders, and that it took a course of action that recognized both of those interests. Even ignoring TFP's failure to account for its fiduciary duty to the court, the court finds TFP's failure to maximize the value of the estate was a breach of its fiduciary duty.

"The purpose of [Chapter 11] is to provide a debtor with legal protection in order to give it the opportunity to reorganize, and thereby to provide creditors with going-concern value rather than the possibility of a more meager satisfaction through liquidation. Therefore, the maximization of the value of the estate is not necessarily the primary goal of a Chapter 11 reorganization as it would be in a Chapter 7 liquidation." *Canadian Pacific Forest Products Ltd. v. J.D. Irving, Ltd. (In re The Gibson Group, Inc.)*, 66 F.3d 1436, 1442 (6th Cir.1995). However, in this case the bankruptcy court found TFP intended to liquidate the property shortly after confirmation so that its equity holders could take advantage of the true value of the property. Thus, in this case, maximization of value should have been the primary concern of TFP.[15]

■ "[T]he willingness of courts to leave debtors in possession·is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trust-ee." *CFTC v. Weintraub*, 471 U.S. 343, 355, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). It is true that a debtor in possession owes a fiduciary duty to both creditors and equity holders. *Id.* This does not allow a debtor in possession to favor equity holders over creditors, however, or to engage in conduct that essentially amounts to concealing assets and self-dealing.[16] To the contrary, the hierarchy of the Bankruptcy Code provides that the interests of creditors are paramount to the interests of the equity holders, and a trustee must act in accordance with this hierarchy. *See id.* ("One of the painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors."). Thus, the court finds that TFP had a duty to maximize the estate under § 1107. *See also In re Unitcast, Inc.*, 214 B.R. 992, 1004 (Bankr.N.D.Ohio 1997), *aff'd*, 219 B.R. 741 (6th Cir. BAP 1998) (finding the premise in a bankruptcy case is that it should be administered by debtor-in-possession to maximize the value of the estate for the debtor's creditors); *In re Ralph C. Tyler, P.E., P.S., Inc.*, 156 B.R. 995, 997 (Bankr. N.D.Ohio 1993) (finding debtor in possession has duty to maximize value of the estate and must pursue claims against shareholders of debtor). The court finds TFP breached this duty by not obtaining the known highest available price for the property prior to confirmation.

## VII. *Conversion to Chapter 7*

■ TFP argues that if the bankruptcy court erred in revoking the order of confir-

---

**15.** Although not discussed by the bankruptcy court, in light of the true value of the property it would appear that the creditors did not receive under TFP's Chapter 11 plan what they would have received under a Chapter 7 liquidation, as required by § 1129(a)(7). The court need not discuss whether TFP's plan complied with this requirement, however, because the court has already found the plan failed to comply with several other requirements of § 1129.

The court does note, however, that TFP specifically told the bankruptcy court that all creditors would receive under its plan what they would in a Chapter 7 liquidation. Thus, contrary to numerous arguments in its brief, TFP did make an affirmative representation to the court on the value of the property.

**16.** The [debtor in possession] does not act in his own interests until he reverts to his former status

upon discharge and confirmation of the plan. The extent of the fiduciary duties should not vary with the identity of the one who performs that role.

The dangers resulting from the concealment of assets are greater when the debtor remains in possession than in cases in which a third party acts as trustee. An outside trustee is a separate mechanism for discovering unlisted claims or assets. If a debtor in possession were permitted to omit claims in bankruptcy and later assert title to them, there might be an inducement to do so, to the prejudice of creditors' interests. Such a rule would undermine the fiduciary status of the debtor in possession.
*Stein v. United Artists Corp.*, 691 F.2d 885, 892 (9th Cir.1982).

mation, it also must have erred in converting the Chapter 11 proceeding to a proceeding under Chapter 7. This court has found that the bankruptcy court did not err in revoking the order of confirmation, however, and finds that the bankruptcy court was well within its discretion in converting the proceeding for cause under § 1112(b). Accordingly, the court finds the proceeding was properly converted to a Chapter 7 proceeding.

## VIII. *Attorney's Fees*

The bankruptcy court awarded First Union attorney's fees and expenses incurred in this action. TFP protests that § 1144 makes no provision for an award of attorney's fees, and that under the "American Rule" a prevailing party does not receive attorney's fees in the absence of a statute or contract providing for such recovery.

While TFP is correct that ordinarily a court may not award attorney's fees in the absence of statutory or contractual authority, *Shimman v. International Union of Operating Engineers, Local 18,* 744 F.2d 1226, (6th Cir.1984), an exception exists where fraud has been practiced upon the court. *Chambers v. NASCO,* 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (citing *Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946)). The bankruptcy court found TFP had committed a fraud upon the court and this court has agreed with that determination. Accordingly, the court finds that the bankruptcy court was within its discretion to award attorney's fees to First Union.

## IX. *Compensatory Damages*

First Union has cross-appealed the bankruptcy court's refusal to reimburse it for funds paid out of the proceeds of the sale of the property. After First Union filed a motion seeking to enjoin TFP's sale of the property to United Dominion, the parties entered into a consensual order whereby TFP was allowed to proceed with the sale of the property. Under that order, TFP was allowed to use the proceeds to pay ordinary closing costs and to satisfy the claims of classes 4, 5, 6, and 7 as provided in the challenged and confirmed plan while placing the rest of the funds in escrow. At issue is TFP's $10,000 payment to Sunburst Bank of Georgia and roughly $80,000 in payments to unsecured trade creditors.

First Union asked the bankruptcy court to reimburse it for those payments, because the claims of both Sunburst Bank and the trade creditors were subordinate to the claim of the bondholders. The bankruptcy court agreed that absent a confirmed plan neither Sunburst nor the trade creditors would have received any value for their claims because they were junior to the bondholders' secured claim. The bankruptcy court also recognized that to be compensated for the full value of their secured claim, the bondholders would have to be compensated in the amount of those payments. Nevertheless, the bankruptcy court refused to compensate First Union because it found that under First Union's plan First Union would have made the payments anyway.

Section 1144 is designed to put the parties back to their pre-confirmation positions, as long as the rights of third parties who in good faith relied on the plan are protected. § 1144. *See S.N. Phelps & Co. v. Circle K Corp. (In re Circle K Corp.),* 171 B.R. 666, 669 (Bankr.D.Ariz.1994). The bankruptcy court understood its task was to try and return the parties to their pre-confirmation positions. However, the bankruptcy court took one step further and essentially put the parties in the position it found they would be in pre-confirmation of TFP's plan and post-confirmation of First Union's plan.

There are several problems with this reasoning. First, it is unclear if First Union's plan would ever have been confirmed. The bankruptcy court itself noted if First Union had been advised of the true value of the property, it "probably would have withdrawn its plan, sought to negotiate a sale to [the interested buyers], or sought conversion or dismissal in order to foreclose and sell after bankruptcy." Second, even if First Union's plan had been confirmed, while that plan called for the payment of the unsecured trade creditors, it also provided that their claims against TFP would be assigned to

First Union. These were recourse claims, and there is evidence in the record that the partners of TFP had personal assets sufficient to cover them. Thus, under First Union's plan the partners of TFP would ultimately have been liable for the $80,000 in unsecured trade claims. The bankruptcy court's refusal to compensate First Union for the payments made to the unsecured creditors therefore has the troubling effect of releasing TFP's partners from personal liability at the expense of sale proceeds First Union was entitled too. Third, the bankruptcy court's order essentially put the parties in their pre-confirmation positions and then directed that First Union pay Sunburst and the unsecured creditors in accordance with what the court believed was required by First Union's plan. It is unclear, however, where the bankruptcy court obtained the power to take this action. Section 105 empowers a court to take action necessary to carry out other provisions of the Bankruptcy Code. But neither § 1144 nor any other provision of the Code would seem to allow the court to direct First Union to proceed in accordance with First Union's proposed plan after TFP's confirmed plan had been revoked.

The court disagrees with the bankruptcy court's legal determination that the bondholders' willingness to make the payments under its plan was relevant in its attempt to restore the parties to their pre-confirmation positions. Accordingly, the court finds that TFP must reimburse First Union for the payments made to Sunburst and the unsecured trade creditors out of the property sale proceeds.

### X. *Punitive Damages*

■ First Union has also cross-appealed the bankruptcy court's refusal to award punitive damages. The bankruptcy court found that punitive damages are often appropriate as punishment or to deter future inappropriate conduct. The court refused to award punitive damages in this case because it had converted the case to a Chapter 7 proceeding and there was no danger of the debtor repeating its abuses.

First Union argues the bankruptcy court should have considered the effect of an award of punitive damages on other debtors. First Union also asserts that the bankruptcy court's award does nothing to prevent the partners of the debtor from forming another entity and engaging in the same conduct.

■ The court agrees with First Union that the deterrence of conduct by other similarly situated parties, including the partners of the now bankrupt TFP, is a consideration that may be taken into account by a bankruptcy court in its decision on whether to award punitive damages. First Union has cited no case, and this court has found none, however, which holds that a bankruptcy court *must* consider the effect of punitive damages on other parties. An award of punitive damages is at the discretion of the bankruptcy court. *Levy v. Runnells (In re Landbank Equity Corp.)*, 83 B.R. 362, 382 (E.D.Va.1987); *Lisk v. Criswell (In re Criswell)*, 52 B.R. 184, 206 (Bankr.E.D.Va.1985). The court finds the bankruptcy court was not required to explore the potential deterrence on other parties in determining whether to impose punitive damages, and therefore finds the bankruptcy court was within its discretion not to do so.

### XI. *Conclusion*

For the reasons stated above, the bankruptcy court's order revoking its prior confirmation of TFP's plan and its order converting the proceeding to Chapter 7 are affirmed. The bankruptcy court's award of attorney's fees to First Union is also affirmed.

On cross-appeal the bankruptcy court's refusal to award compensatory damages is reversed, and its refusal to award punitive damages is affirmed. This matter is remanded to the bankruptcy court for the award of compensatory damages consistent with this opinion.